```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                    :
J.E. DUNN CONSTRUCTION CO.
                                    :
     v.                             :  Civil Action No. DKC 11-1948
                                    :
S.R.P. DEVELOPMENT LIMITED
PARTNERSHIP, et al.                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are (1) the motion of Plaintiff/Counter-Defendant J.E. Dunn Construction Company ("J.E. Dunn") to strike the first amended answer, counterclaim, and cross-claim of Defendants/Counter-Plaintiffs S.R.P. Development Limited Partnership, The Smoot Corporation, and Robuck Investment, Inc.'s (collectively "SRP") or, in the alternative, to dismiss counts I and II of the first amended counterclaim. (ECF No. 67), and (2) a motion to renew the motion to dismiss previously filed by Plaintiff. (ECF No. 60). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to renew will be denied as moot. The motion to strike or, in the alternative, to dismiss will be granted in part and denied in part. Defendants' filing of an amended pleading will

be accepted as the operative pleading, but JE Dunn's motion to dismiss the amended counterclaim will be granted.[1]

**I. Background**

This case has three groups of parties: J.E. Dunn, SRP, and Metropolitan Baptist Church ("Metropolitan") and involves the efforts to build a new "megachurch" for Metropolitan in Upper Marlboro, Maryland ("Project"). On September 29, 2005, Metropolitan retained SRP to serve as its project manager for the Project through a Development Management Agreement ("Development Contract"), and the Agreement Between Owner and Design Builder ("Design Build Contract"). The Development Contract provides that SRP will generally act as Metropolitan's trusted advisor by shepherding the Project through to completion, such as handling zoning, legal, financing issues, along with evaluating the drawings, cost estimates, and construction schedule of the general contractor.[2] (ECF No. 33-1

---

[1] On April 1, 2014, the law firm LeClairRyan filed a motion to withdraw as attorney for Defendants. (ECF No. 72). LeClairRyan represents that all parties have been consulted and do not oppose its withdrawal. The motion will be granted and Defendants will be advised accordingly.

[2] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider such evidence where the plaintiff has notice of it, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n.1 (D.Md. 2009). Counter-Plaintiff S.R.P. attached to its counterclaim the Development

2

§ 2.2). In exchange for receiving these services, Metropolitan agreed to pay SRP five percent (5%) of the total construction budget for the Project plus expenses. (*Id.* §§ 3.1, 3.4). The contract states that each party reserves the right to cancel the agreement upon written notice to the other party. If the agreement was terminated for convenience, the parties are relieved of all further obligations, but Metropolitan is obligated to pay SRP the costs and fees which have been authorized and incurred by SRP at the time of termination. (*Id.* § 6.1).

SRP subsequently entered into negotiations with J.E. Dunn for the Project's general contract services. J.E. Dunn evaluated the Project and provided a Guaranteed Maximum Price ("GMP") for the Project as $31,098,000. A GMP is a method of cost control whereby the contractor is compensated for actual costs incurred not to exceed the GMP. On September 28, 2005, SRP acknowledged the GMP and authorized J.E. Dunn to begin procurement. (ECF No. 33-4). Based on the GMP representation, SRP retained J.E. Dunn to serve as the Project's general contractor and entered into an agreement on November 29, 2005.

Construction started, but problems ensued. On or about July 29, 2008, Metropolitan terminated the Development Contract

---

Contract, the Design-Build Contract, and the agreement between J.E. Dunn and SRP. These documents will be considered as part of the motion to dismiss.

and the Design-Build Contract with SRP on August 6, 2008. In turn, SRP terminated the Subcontract with J.E. Dunn on August 18, 2008, pursuant to Section 14.1 of the contract, purportedly "without cause."

J.E. Dunn's Amended Complaint asserts claims against SRP for breach of contract damages in the amount of $3,591,062, and for quantum meruit and unjust enrichment damages in the amount of $7,300,000. J.E. Dunn also asserts claims against Metropolitan for promissory estoppel, breach of contract, quantum meriut, and unjust enrichment. (ECF No. 31). J.E. Dunn asserts, upon information and belief, that Metropolitan terminated the contracts with SRP as a result of negligent misrepresentations made by SRP to Metropolitan regarding the scope and cost of the Project. J.E. Dunn's Amended Complaint also recites that Metropolitan later requested it to complete the Project and those two parties entered into a direct agreement under which J.E. Dunn was to supply all labor, services and materials necessary to complete the Project, for which it is owed $3,629,891. On February 5, 2009, J.E. Dunn commenced a mechanic's lien action against the Project.

In its amended counterclaim against J.E. Dunn, SRP alleges that work began in December 2005. From the very beginning, J.E. Dunn's billing far exceeded the amount contemplated by the parties and by spring 2008, Project costs had already approached

4

the limits of the GMP.  SRP alleges that J.E. Dunn failed to investigate subcontractor costs and should have known that it could not complete work on the Project within the GMP or any amount Metropolitan could reasonably be expected to pay. According to SRP, the parties initially attempted to cooperate to remedy the cost situation but, unbeknownst to SRP, J.E. Dunn was independently negotiating with Metropolitan to oust SRP and enter into a direct agreement with Metropolitan.  (ECF No. 64 ¶¶ 13 and 14).

On July 29, 2008, Metropolitan sent a letter to SRP terminating - effective August 6, 2008 - both the Development Contract and the Design Build Contract.  (ECF No. 34-2).[3]  As a direct and proximate result of Metropolitan's termination of their contracts, SRP, without waiving any of its rights, was forced to terminate its contract with J.E. Dunn.  SRP's termination letter, dated August 18, 2008, stated:

> As you are aware, [Metropolitan] has terminated each of its contracts with SRP, . . . and SRP has proposed that J.E. Dunn consent to the assignment of . . . the Agreement from SRP to [Metropolitan].  At this juncture, J.E. Dunn has not consented to the proposed assignment.

---

[3] J.E. Dunn attached these letters to its original motion to dismiss.  They are referenced in the complaint and SRP, in its opposition papers, does not challenge their authenticity.  Thus, the court may consider them in resolving the pending motion to dismiss.

>      Therefore, in the interests of moving the
>      Project forward, and without waiving any
>      rights thereunder, pursuant to § 14.1 of the
>      Agreement, SRP hereby provides, to J.E.
>      Dunn, Notice of Termination of the Agreement
>      effective as of August 6, 2008, based upon
>      [Metropolitan's] termination of the
>      agreements with SRP. SRP hereby requests
>      J.E. Dunn coordinate a meeting among SRP,
>      J.E. Dunn, and [Metropolitan] for the
>      purpose of facilitating an efficient
>      transition of the Project, and addressing
>      any and all remaining issues.

(ECF No. 34-3). According to SRP, J.E. Dunn and Metropolitan then entered into their own agreement whereby J.E. Dunn continued to work as general contractor on the Project. (ECF No. 64 ¶¶ 16 and 17).

SRP filed its original counterclaim on October 26, 2012 (ECF No. 33), and its amended counterclaim on December 12, 2013 (ECF No. 64). J.E. Dunn filed a motion to strike this amended pleading or, in the alternative, to dismiss the counterclaim on December 30, 2013. (ECF No. 67). SRP opposed the motion on January 16, 2014 (ECF No. 68), and J.E. Dunn replied on February 3, 2014 (ECF No. 69).

**II. Analysis**

    **A.   Motion to Strike**

J.E. Dunn argues that (1) the amendments are untimely, (2) CounterPlantiffs failed to seek consent or leave of court, and (3) the lack of timeliness should not be excused due to prejudice. Pursuant to Fed.R.Civ.P. 15(a)(2), the court should

6

"freely give leave to amend pleadings "when justice so requires."[4] Therefore, the court should deny leave to amend only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted); *Keller v. Prince George's Cnty.,* 923 F.2d 30, 33 (4th Cir. 1991) (upholding district court order denying plaintiff leave to amend his complaint to include claims that were barred by the applicable statute of limitations because such amendment would be futile). "An amendment is futile when the proposed amendment is clearly insufficient or frivolous on its face, or if the amended claim would still fail to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *El-Amin v. Blom,* No. CCB-11-3424, 2012 WL 2604213, at *11 (D.Md. July 5, 2012) (internal citations and quotation marks omitted).

The scheduling order in this case had been stayed to allow the parties to attempt mediation. Mediation failed, and the court approved the parties' joint status report on October 17,

---

[4] Rule 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days after serving it; or 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. SRP filed its original counterclaim on October 26, 2012 and J.E. Dunn filed its motion to dismiss on November 16, 2012. Because SRP filed its amended counterclaim on December 16, 2013, SRP is not entitled to amend as of right.

7

2013.  (ECF No. 59).  That status report set the deadline for motions for joinder of additional parties and amendment of pleadings as December 12, 2013.  (ECF No. 58).  J.E. Dunn's argument is that the amendment would be prejudicial as SRP waited more than three months to file its amendment, without seeking the consent of J.E. Dunn or the court.  J.E. Dunn also had a pending motion to dismiss which SRP acknowledged, as evidenced by SRP's filing of an opposition on November 1, 2013. (ECF No. 61).  Additionally, J.E. Dunn argues that it has been prejudiced because it has already provided discovery, including discovery aimed at certain allegations that have now been removed or modified by the Amended Counterclaim.

J.E. Dunn's arguments will be rejected.  While SRP failed to comply with Local Rule 103.6(d) requiring a party to attempt to obtain consent of opposing counsel before filing a motion requesting leave to file an amended pleading, the prejudice alleged by J.E. Dunn is not apparent.  There does not appear to be any delay as J.E. Dunn quickly reacted to the amended complaint by renewing its motion to dismiss and addressed the amended counterclaim.  Construing SRP's amended counterclaim as a motion for leave to file an amendment, the motion will be granted, the December 12, 2013 amendment will be the operative pleading, and J.E. Dunn's motion to dismiss that pleading for failure to state a claim will be considered.

**B.   Motion to Dismiss**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Count I of the amended counterclaim alleges that J.E. Dunn breached its contract in two ways: first, by surreptitiously negotiating with Metropolitan to arrive at an agreement whereby Metropolitan would terminate its agreements with SRP. This negotiation would cause SRP to terminate its agreement with J.E. Dunn, thereby freeing up J.E. Dunn and Metropolitan to contract directly, denying SRP its fee, resulting in savings to Metropolitan. Second, SRP claims J.E. Dunn breached its contract by failing to complete the Project within the GMP.

SRP presents its first argument as a breach of contract by J.E. Dunn's conspiracy with Metropolitan to deny SRP the benefits of its contracts.[5] SRP points to the fact that all Maryland contracts are subject to the implied covenant of good faith and fair dealing. But "[e]ven where Maryland law recognizes an implied covenant of good faith and fair dealing, it is limited to the duty not to prevent the other party from performing the contract." *Roberson v. Ginnie Mae REMIC Trust 2010 H01*, 973 F.Supp.2d 585, 589 (D.Md. 2013) (*citing Parker v.*

---

[5] For purposes of this analysis, it is assumed that SRP can bring an affirmative claim for damages despite having terminated the contract without cause.

10

*Columbia Bank*, 91 Md.App. 346, 366 (1992)). The Court of Appeals for Maryland has explained:

> [T]he covenant of good faith and fair dealing does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract]. Rather, the duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract. In short, while the implied duty of good faith and fair dealing recognized in Maryland requires that one party to a contract not frustrate the other party's performance, it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise. An implied duty is simply recognition of conditions inherent in expressed promises.

*Blondell v. Littlepage*, 413 Md. 96, 114 (2010) (*quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'Ship*, 213 F.3d 175, 182-84 (4th Cir. 2000)). Here, SRP alleges that J.E. Dunn breached its contract with SRP by "surreptitiously negotiating with Metropolitan to enter into a new contract that would and did exclude SRP." (ECF No. 64 ¶ 23). But in neither its amended counterclaim nor its opposition does SRP point to any provision of the Agreement that prohibits J.E. Dunn from engaging in such discussions. This is a prime example of an obligation that may be "logical and wise," but has not been imposed on the contracting party. Absent some contractual obligation that J.E. Dunn breached, all that is left is a standalone "violation of

11

the duty of good faith." Maryland does not recognize this cause of action. *Mount Vernon Props., LLC v. Branch Banking & Trust Co.*, 170 Md.App. 457, 471-72 (2006). Consequently, SRP has not alleged a cause of action for breach of contract under this theory.

SRP's second theory for breach of contract is that "J.E. Dunn failed to finish the Project for less than or equal to the GMP and, therefore, breached the [Agreement]." (ECF No. 64 ¶ 22). SRP argues that the GMP given by J.E. Dunn negligently underestimated its costs by about $20 million. According to SRP, the GMP was nearly reached when the Project was only 55% complete, but J.E. Dunn decided that, instead of absorbing any costs above the GMP per the terms of the Agreement, it would conspire with Metropolitan to cut out SRP and use the money Metropolitan would have paid to SRP to put toward the Project's costs.

"A breach of contract action requires a contractual obligation in the first instance." *Davis v. Balt. Hebrew Congregation*, 985 F.Supp.2d 701 (D.Md. 2013). As with its first theory, SRP points to no contractual obligation held by J.E. Dunn. The GMP was a representation by J.E. Dunn as to how much the Project would cost. Section 4.2.2 of the Agreement states that J.E. Dunn guarantees that the cost of work will not exceed the GMP. The GMP is designed to transfer risk to J.E. Dunn as

12

all costs in excess of the GMP are to be paid by J.E. Dunn, not SRP or Metropolitan.  SRP does not allege that J.E. Dunn refused to perform, or that J.E. Dunn demanded payment for costs in excess of the GMP.  The work on the Project was stopped because SRP terminated the contract after Metropolitan terminated its agreements with SRP.  SRP does not state a breach of contract on this theory.

SRP also alleges, for the first time in its opposition, that J.E. Dunn committed an anticipatory breach of contract. Under Maryland law, "[o]rdinarily, in order to constitute anticipatory repudiation, there must be a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." *C.W. Blomquist & Co., Inc. v. Capital Area Realty Investors Corp.*, 270 Md. 486, 494 (1973). The Court of Appeals of Maryland quoted favorably from Professor Corbin's treatise:

> It has been thought that a mere expression of inability to perform in the future is not a repudiation of duty and cannot be operative as an anticipatory breach. Of course, the expression of a doubt as to whether the ability to perform in accordance with the contract will exist when the time comes, is not a repudiation. A statement of inability to perform, however, may be so made as to justify the other party in understanding it as a definite repudiation. There may be cases in which expressions of inability by one party or an existing appearance of inability on his part to perform will justify the other party in

13

>        nonperformance of his part of the contract
>        or in materially changing his position so as
>        to make performance impossible, without at
>        the same time operating as an anticipatory
>        breach, for which an action for damages
>        could be maintained.

*Id.* at 495 (*quoting* 4 Corbin on Contracts § 974, at 914-16 (1951)).  SRP argues that

>        [t]he wide miss of the GMP is what forced
>        J.E. Dunn to attempt to cut SRP out of the
>        deal to free up additional funds.  That act
>        demonstrates J.E. Dunn had no intention to
>        complete the project within the agreed price
>        limits and that its breach was inevitable. .
>        . .  When it became apparent that J.E. Dunn
>        had underestimated its cost by $20 million,
>        its  inability  to  perform  was  either
>        inevitable or so much in doubt that it
>        constituted an anticipatory breach.

(ECF No. 37, at 14-15).  In support, SRP points to comment (b) to Section 323 of the First Restatement of Contracts: "It may be supposed that a party unjustifiably manifesting unwillingness or inability continues in the same state of mind or lack of ability when the time for performance arrives.  In that case there is necessarily a breach of contract."  According to SRP, J.E. Dunn's underestimation of the cost by $20 million made its inability to perform either inevitable or so much in doubt that it constituted an anticipatory breach.

This argument fails for several reasons.  First, while the lead case from the Maryland Court of Appeals on anticipatory breach – *C.W. Blomquist* – quoted favorably from the First

Restatement, that case and others from Maryland have consistently held that repudiation must take the form of a positive statement or act. *C.W. Blomquist*, 270 Md. at 494 ("there must be a definite, specific, positive, and unconditional repudiation of the contract"); *Weiss v. Sheet Metal Fabricators, Inc.*, 206 Md. 195, 204 (1955) ("refusal to perform must be positive and unconditional"). SRP does not allege J.E. Dunn made any such repudiation; instead, it alleges that repudiation can be inferred from the allegedly wildly off-base GMP. While J.E. Dunn's wildly off-base cost estimation – and the subsequent efforts of all parties to remedy the situation – could be considered a positive act evincing repudiation, such an expression of doubt by J.E. Dunn as to whether it could perform does not rise to the level necessary to constitute anticipatory breach. *See C.W. Blomquist*, 270 Md. at 495; *String v. Steven Dev. Corp.*, 269 Md. 569, 579-80 (1973); *Harrell v. Sea Colony, Inc.*, 35 Md.App. 300, 307-08 (1977) (buyers' request to be relieved of their obligations and a statement that they do not want to proceed with the purchase is not so definite and unequivocal). Additionally, merely failing to complete the Project within the GMP would not constitute a breach; instead, the contract would oblige J.E. Dunn to cover the cost overruns. A definite statement that J.E. Dunn was not going to come in within the GMP *and* that it expected SRP or

15

Metropolitan to pay the additional costs would be a definite repudiation; the first statement alone is not sufficient. *Cf. Himelfarb v. Am. Express Co.*, 301 Md. 698, 704 (1984) (buyer's announced refusal to pay for product was an anticipatory breach when payment was imminent); *Stefanowicz Corp. v. Harris*, 36 Md.App. 136, 147 (1977) (purchasers who state that they "hereby cancel their contract" have positively and unconditionally repudiated). Finally, SRP terminated the Agreement not because J.E. Dunn had stated it would not perform, but because Metropolitan canceled its agreements with SRP. SRP has not pled sufficiently a claim of anticipatory breach of contract.

Count II alleges pre-contractual negligent misrepresentation by J.E. Dunn, namely that J.E. Dunn knew that SRP would rely on J.E. Dunn's estimate that it could fully perform the Project within the GMP and intended for SRP to act on this representation. Instead, J.E. Dunn failed to perform within the GMP, underestimating its cost of performance by approximately $20 million. SRP alleges it was damaged by this negligent misrepresentation.

Under Maryland law, to assert a claim of negligent misrepresentation, a plaintiff must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge

16

>that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 (1982). SRP alleges that: J.E. Dunn knew that SRP would rely on its cost estimate to build the Project; J.E. Dunn intended that SRP act on its representation; because J.E. Dunn failed to investigate subcontractor costs, J.E. Dunn should have known that its GMP was erroneous and would cause injury to SRP; SRP relied on J.E. Dunn's GMP representations and entered into a contract with Metropolitan in reliance on that representation; and J.E. Dunn failed to perform within the GMP and underestimated its cost of performance by approximately $20 million, which damaged SRP.

J.E. Dunn argues that SRP has failed to allege any facts to support its contention that the GMP representation was false. The counterclaim, however, alleges that J.E. Dunn failed to investigate subcontractor costs and that it became apparent to all that J.E. Dunn would not be able to complete the Project within the GMP and all parties attempted to work together to remedy the situation. (ECF No. 64 ¶¶ 12, 14). J.E. Dunn next argues that SRP has failed to allege any facts to establish that J.E. Dunn should have known that, if its actual construction costs exceeded the GMP, SRP would be damaged. The whole purpose

17

of a GMP is that if costs run over, it is the contractor, not the designer, who bears the injury. SRP responds by arguing that

> [t]he natural and probable result of missing the GMP by such an unconscionable margin is that no one, save J.E. Dunn, gets what it bargained for. The miscalculation forced J.E. Dunn to conspire with Metropolitan to terminate SRP. Metropolitan has a half-built church. SRP gets a diminished reputation and only a portion of the development management fee for which it bargained.

(ECF No. 37, at 17). Even taking all allegations in the light most favorable to SRP, it has not adequately pled how the alleged false statement would have caused SRP injury. J.E. Dunn is not alleged to have failed to perform its contractual obligations to continue building the Project after the GMP was breached; SRP terminated the contract before the GMP was breached. SRP also does not allege that J.E. Dunn had no intention of paying for any cost overruns. SRP seems to argue that J.E. Dunn should know that its allegedly grossly underestimated GMP would cause SRP injury, but does not at all explain how that can be the case. It is not at all apparent, even taking all allegations in the light most favorable to SRP, how J.E. Dunn's underestimation caused SRP injury when (1) J.E. Dunn never breached the GMP; and (2) J.E. Dunn never demanded that SRP or Metropolitan pay for costs in excess of the GMP.

The Agreement provided that all costs beyond the GMP would be paid by J.E. Dunn. SRP was protected from underestimations, regardless of how widely off-base they were. Absent allegations explaining how J.E. Dunn's alleged misrepresentation concerning the costs of the Project would, if relied upon by SRP, cause it harm, SRP has failed to allege sufficiently a claim of negligent misrepresentation.[6]

### III. Conclusion

For the foregoing reasons, J.E. Dunn's motion to strike SRP's amended answer, counterclaim, and cross-claim or, in the alternative, to dismiss the amended counterclaim will be granted in part and denied in part. The motion to strike is denied; the amended pleading is the operative pleading. The motion to dismiss the amended counterclaim is granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[6] In addition, it is seriously doubtful that SRP could rightly rely on the GMP, given that the later-signed Agreement provides that J.E. Dunn and SRP shall establish the GMP at a later point, once J.E. Dunn is furnished with the drawings and specifications from SRP's architect. There is no indication that this "official" GMP was ever arrived at. (ECF No. 33-3 § 4.2.4).