IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.E. DUNN CONSTRUCTION CO.                :

                                          :

        v.                                :   Civil Action No. DKC 11-1948

                                          :

S.R.P. DEVELOPMENT LIMITED
PARTNERSHIP, et al.                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are: (1) a motion for summary judgment on counts I and VIII of its amended complaint filed by Plaintiff J.E. Dunn Construction Company ("J.E. Dunn" or "Plaintiff") (ECF No. 95); (2) a cross motion for summary judgment filed by Defendants S.R.P. Development Limited Partnership, The Smoot Corporation ("Smoot"), and Robuck Investment, Inc.'s ("Robuck") (collectively, "SRP" or "Defendants") (ECF No. 97); and (3) a motion for summary judgment filed by Defendant Metropolitan Baptist Church ("Metropolitan") (ECF No. 98).[1]  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, J.E. Dunn's motion for summary judgment will be denied.  SRP's cross-motion for summary judgment will be granted in part and denied

---

[1] Metropolitan originally moved for summary judgment on October 22, 2014 (ECF No. 96), but subsequently filed an amended motion to correct a typographical error (ECF No. 98).

in part.   Metropolitan's motion for summary judgment will be granted.

**I.   Background**

    **A.   Factual Background**

Unless otherwise noted, the following facts are undisputed. This case has three parties: J.E. Dunn, SRP, and Metropolitan and involves the efforts to build a new "megachurch" for Metropolitan in Upper Marlboro, Maryland ("the Project").   On September 29, 2005, Metropolitan retained SRP to serve as its project manager for the Project through a Development Management Agreement ("Development Contract"), (ECF No. 33-1), and the Agreement Between Owner and Design Builder ("Design Build Contract") (ECF No. 33-2).   The Development Contract provided that SRP would generally act as Metropolitan's trusted advisor by shepherding the Project through to completion, such as handling zoning, legal, financing issues, along with evaluating the drawings, cost estimates, and construction schedule of the general contractor.   (ECF No. 33-1 § 2.2).   The contract stated that each party reserved the right to cancel the agreement upon written notice to the other party.   If the agreement were to be terminated for convenience, the parties were relieved of all further obligations, but Metropolitan would be obligated to pay SRP the costs and fees which had been authorized and incurred by SRP at the time of termination.   (*Id.* § 6.1).

SRP subsequently entered into negotiations with J.E. Dunn for the Project's general contract services. J.E. Dunn evaluated the Project and provided a Guaranteed Maximum Price ("GMP") for the Project of $31,098,000. (ECF No. 33-4, at 2). A GMP is a method of cost control whereby the contractor is compensated for actual costs incurred not to exceed the GMP. On September 28, 2005, SRP acknowledged the GMP and authorized J.E. Dunn to begin procurement. (*Id.*). SRP retained J.E. Dunn to serve as the Project's general contractor and entered into a modified AIA A491 – 1996 Agreement Between Design/Builder and Contractor ("the Subcontract") on November 29, 2005. (ECF No. 33-3). Rees & Associates was the architect on the Project. (ECF No. 33-3, at 3). Article 4.2.4 of the Subcontract stated:

> Contractor [J.E. Dunn] will be furnished with Drawings and Specifications (the Bid Documents) issued by Design-Builder's Architect for the entire Project sufficiently developed so that Contractor can obtain bids from subcontractors and materialmen for the various scopes of work. Contractor shall have the right to bid any such scopes of work as a subcontractor. After the Bid Documents have been issued and an Estimated Cost of the Work determined, the Contractor and Design/Builder shall establish the Guaranteed Maximum Price ("GMP") and the Contractor's Fee, including fee on the cost of Preconstruction Services described in Exhibit H, by executing a written Amendment to this Agreement (the "GMP Amendment").

(ECF No. 33-3, at 6).    Under Article 4.2.1 of the Subcontract, J.E. Dunn would recover a Contractor's Fee "as an amount equal to three and one-half percent (3.5%) of the Estimated Cost of the Work used to establish the [GMP]."  (ECF No. 33-3, at 5). J.E. Dunn asserts that SRP and Metropolitan decided to release J.E. Dunn to perform particular scopes of work under the Subcontract and for the Project through ten (10) Work Authorization packages, in the total amount of $34,001,754. (ECF No. 94, Exh.A.1, Taylor depo, at 83 & Exh.A.9).

Construction started and problems ensued.    On July 29, 2008, Metropolitan sent two letters to SRP terminating both agreements.  (ECF No. 34-2).[2]  Consequently, on August 18, 2008, SRP sent a termination letter to J.E. Dunn, which stated in relevant part:

> As you are aware, the Owner has terminated each of its contracts with SRP Development Limited Partnership ("SRP"), and SRP has proposed that JE Dunn consent to the assignment of AIA Document A491 – 1996 Part 2 Standard Form of Agreement Between Design/Builder and Contractor (the "Agreement") from SRP to the Owner.  At this juncture, JE Dunn has not consented to the proposed assignment.
>
> Therefore, in the interests of moving the Project forward, and without waiving any rights thereunder, pursuant to § 14.1 of the Agreement, SRP hereby provides, to JE Dunn,

---

[2]  The termination of the Design Build Contract became effective August 6, 2008, and the termination of the Development Contract became effective immediately.

4

>           Notice of Termination of the Agreement
>           effective as of August 6, 2008, based upon
>           the Owner's termination of the agreements
>           with SRP.  SRP hereby requests that JE Dunn
>           coordinate a meeting among SRP, JE Dunn, and
>           the Owner [Metropolitan] for the purposes of
>           facilitating an efficient transition of the
>           Project, and addressing any and all
>           remaining issues.
>
>           . . . Please also confirm whether JE
>           Dunn will submit to SRP additional invoices
>           and billings.  With regard to open invoices,
>           as has been the practice over the course of
>           the Project, the Owner [Metropolitan] will
>           make payment directly to JE Dunn.

(ECF No. 34-3, at 2).

    SRP contends that J.E. Dunn did not respond to this letter.
Instead, J.E. Dunn began to deal directly with Metropolitan and
continued work on the Project.  Tory Sigler, Vice President with
J.E. Dunn, explained:

>           After Metropolitan terminated the
>           Development and Design-Build Contracts,
>           Metropolitan requested that [J.E.] Dunn
>           continue performing work on the Project and
>           represented to [J.E.] Dunn that it would pay
>           [J.E.] Dunn for its work.  At this time,
>           Metropolitan represented that it was seeking
>           additional financing to complete the entire
>           project, including scopes of work and costs
>           in excess of the work already approved by
>           the Work Authorization packages 1 through
>           10.

(ECF No. 95-4 ¶ 5).  Mr. Sigler avers that J.E. Dunn performed
work on the Project directly for Metropolitan from mid-August
2008 through early October 2008.  (*Id.* ¶ 7).  Jason T. Martin,
Vice President and Regional General Counsel for J.E. Dunn, avers

that J.E. Dunn and Metropolitan discussed executing a formal written contract and "a draft AIA A101 contract was circulated and modified by the parties; however, ultimately, the contract was not executed." (ECF No. 95-3 ¶ 6). According to Mr. Sigler, at no point did Metropolitan object to the work performed or "retract its repeated requests that [J.E.] Dunn continue performing work on the Project or its representation that it would compensate [J.E.] Dunn for its work." (ECF No. 95-4 ¶ 7). Metropolitan never paid J.E. Dunn for the additional work performed, however. Mr. Martin contends that "[t]he reasonable value of the labor, materials and services, $3,629,891, provided directly to Metropolitan at its request [is] still due and owing to J.E. Dunn and J.E. Dunn has not been paid these amounts by Metropolitan, nor has it recovered them from any other source." (ECF No. 95-3 ¶ 7). J.E. Dunn also contends that SRP failed to pay J.E. Dunn amounts owed upon termination of the Subcontract in accordance with Article 14. More details will be provided in the analysis section below.

On November 24, 2008, J.E. Dunn served Metropolitan with a sworn Notice to Owner or Owner's Agent of Intention to Claim a Lien on the Property. (ECF No. 94-4). The Notice indicates that J.E. Dunn is owed $3,591,062 as of August 18, 2008 in connection with its Subcontract with SRP; and that Metropolitan owes it $3,629,891. (*Id.* at 3). On February 6, 2009, J.E. Dunn

filed in the Circuit Court for Prince George's County a petition to establish and enforce a mechanic's lien on the Property in the amount of $7,220,953 (the combined total of the alleged amount owed by SRP and Metropolitan). (ECF No. 94-5).   On March 31, 2009, a final mechanic's lien order was entered in the Circuit Court for Prince George's County in the principal amount of $7,220,953 in favor of J.E. Dunn against land owned by Metropolitan.[3]  (ECF No. 94-7).

## B. Procedural Background

J.E. Dunn filed a complaint on July 15, 2011, alleging claims for breach of contract, negligence, negligent misrepresentation, quantum meruit, unjust enrichment, and promissory estoppel against Defendants SRP, Smoot, and Robuck. (ECF No. 1).   SRP, Smoot and Robuck then moved to dismiss, alleging lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.   The motion was granted in part and denied in part on September 20, 2012. (ECF Nos. 25 & 26).   As relevant here, the opinion indicated that "Smoot and Robuck, as SRP general partners, may be liable for any outstanding obligation after exhaustion of SRP's assets and, for that reason, are proper parties to this suit. . . .  Because Smoot and Robuck may not be held individually liable, JE Dunn

---

[3] The requirements and procedures for obtaining a mechanic's lien are set forth in Md.Code Ann., Real Prop. § 9-101 *et seq.*

may not satisfy any judgment against them without first
exhausting the assets of SRP." (ECF No. 25, at 17-18). The
decision also held that "to the extent that JE Dunn alleges
negligent misrepresentation based on pre-contractual
negotiations that induced it to enter into the subcontract,
Maryland law supports that it was owed an independent duty that
SRP's representations be accurate and the allegations in the
first Count V for negligent misrepresentation are sufficient in
the pre-contractual phase." (*Id.* at 22). The negligence and
negligent misrepresentation claims were dismissed, however,
insofar as they were based on an alleged duty by SRP to manage
the project in accordance with industry standards or to make
accurate representations *after* the subcontract was signed. (*Id.*
at 26).

On October 12, 2012, Plaintiff filed an amended complaint -
the operative pleading here - adding Metropolitan as a defendant
and adding claims for breach of contract, quantum meruit, unjust
enrichment, and promissory estoppel against Metropolitan. (ECF
No. 31). SRP initially filed an answer, two cross-claims
against Metropolitan, and counterclaimed against J.E. Dunn on
October 26, 2013, (ECF No. 33), and later filed an amended
pleading on December 16, 2013 (ECF No. 64). Specifically, SRP
counterclaimed against J.E. Dunn for breach of contract (count
I) and pre-contractual negligent misrepresentation (count II).

8

SRP asserted cross-claims against Metropolitan for breach of contract (count III), and for tortious interference with contractual relations (count IV), the basis for which will be discussed below. J.E. Dunn filed a motion to strike this amended pleading or, in the alternative, to dismiss the counterclaims. The court issued a memorandum opinion and order on August 5, 2014, granting J.E. Dunn's motion to dismiss the amended counterclaims and dismissing counts I and II as to J.E. Dunn. (ECF Nos. 75 & 76).

On October 3, 2014, J.E. Dunn moved for partial summary judgment as to Counts I and VIII of its amended complaint as to SRP and Metropolitan, respectively. (ECF No. 95). SRP filed an opposition and a cross motion for summary judgment on counts I through V of J.E. Dunn's complaint. (ECF No. 97). J.E. Dunn filed an opposition to the cross motion and a reply in support of its own motion. (ECF No. 99.) SRP filed a reply in support of its own motion. (ECF No. 102). Metropolitan did not oppose J.E. Dunn's motion, but it did file a motion for summary judgment as to SRP's two cross-claims for breach of contract and tortious interference with contractual relations. (ECF Nos. 96 & 98). SRP did not oppose the motion.

## II.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure, permits a party to move for summary judgment or partial summary judgment

by identifying "each claim or defense — or the part of each claim or defense — on which summary judgment is sought." "[P]artial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case.   This adjudication . . . serves the purpose of speeding up litigation by" narrowing the issues for trial to those over which there is a genuine dispute of material fact. *Rotorex Co. v. Kingsbury Corp.,* 42 F.Supp.2d 563, 571 (D.Md. 1999) (internal quotation marks omitted) (noting that "numerous courts have entertained and decided motions for partial summary judgment addressing particular issues").

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).   Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof to avoid summary judgment.   *Celotex,* 477 U.S. at 322–23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to

judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.* at 248.   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."   *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment.   *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."   *Shin v.*

*Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).
Indeed, this court has an affirmative obligation to prevent
factually unsupported claims and defenses from going to trial.
*See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993)
(*quoting Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th
Cir. 1987)).

**III. Analysis**

    **A.    J.E. Dunn's Motion for Summary Judgment**

    J.E. Dunn seeks summary judgment on its breach of contract
claim against SRP, Smoot, and Robuck[4] (count I) and its quantum
meruit claim against Metropolitan (count VIII). (*See* ECF No.
31, amended complaint).[5]

    **1.    J.E. Dunn's Breach of Contract Claim against SRP**

    Under Maryland law, to establish a breach of contract,
there must be a contractual obligation owed by the defendant to
the plaintiff and a material breach of that obligation. *RRC
Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010). J.E. Dunn
contends that SRP breached the Subcontract by failing to pay
J.E. Dunn all amounts earned under the Subcontract on or before

---

    [4] These defendants will be referred to collectively as SRP.

    [5] J.E. Dunn indicates that although it only moves for
summary judgment on count I as to SRP and count VIII as to
Metropolitan, resolution of these claims essentially will
resolve the underlying litigation. (ECF No. 95-1, at 2).

the date of termination on August 18, 2008.[6]  (ECF No. 31 ¶ 28).
SRP terminated the Subcontract with J.E. Dunn on August 18,
2008, pursuant to Article 14.1 of the Subcontract, "based upon
the Owner's [Metropolitan's] termination of the agreements with
SRP."  (*See* ECF No. 34-3, at 2).  Article 14.1 states: "If the
Agreement between the Owner and the Design/Builder is
terminated, the Design/Builder may terminate this Agreement
without cause."  (ECF No. 33-3, at 13).  Article 14.3 in turn
provides:

> Upon termination pursuant to Section 14.1 or
> 14.2, *the amount to be paid the Contractor
> shall be* [] the Cost of the Work completed
> to date, less payments made to date, plus
> the cost of demobilizing and canceling
> existing subcontracts, material contracts
> and purchase orders and the Contractor's fee
> shall be calculated as if the Work had been
> fully completed by the Contractor, including
> a reasonable estimate of the Cost of the
> Work not actually completed.

(*Id.* at 14) (emphasis added).

"Cost of the Work" is defined in Article 6 of the
Subcontract.  Specifically, Article 6.1 provides: "The term Cost
of the Work shall mean costs necessarily incurred by the
Contractor [J.E. Dunn] in the proper performance of the Work.
Such costs shall be at rates not higher than the standard paid
at the place of the Project except with prior consent of the

---

[6] SRP's termination letter to J.E. Dunn is dated August 18,
2008, thus the termination became effective on that date.  SRP
cannot make its termination of the Subcontract retroactive.

13

Design/Builder.  *The Cost of the Work shall include only those items set forth in this Article 6.*"  (*Id.* at 6) (emphasis added).   Article 6 then discusses: labor costs; subcontract costs; costs of materials and equipment incorporated in the completed construction; costs of other material and equipment, temporary facilities and related items; miscellaneous costs; other costs; and emergencies: repairs to damaged, defective or nonconforming work.  (*Id.* at 7-8).[7]

Two separate calculations need to be made, then, in order to ascertain the damages owed to J.E. Dunn due to the termination of the contract: the remaining cost of work done, with appropriate adjustments, and the remaining contractor's fee.   J.E. Dunn seeks damages in the amount of $3,591,062 for the Cost of the Work and "lost profits" in the amount of $183,927.02.  (ECF No. 95-2 ¶¶ 5-6; ECF No. 95-1, at 5).

J.E. Dunn seeks to establish these amounts in an ultimately insufficient affidavit from Travis Noble, a former Assistant Vice President with J.E. Dunn.  The affidavit states that at the time the Subcontract was terminated on August 18, 2008, the Cost of the Work invoiced by J.E. Dunn totaled $28,746,696, for which J.E. Dunn was paid $25,155,634, leaving an unpaid balance of $3,591,062.  J.E. Dunn argues that of the $3,591,062 allegedly

---

[7] Article 7 covers costs *not* to be reimbursed.  (ECF No. 33-3, at 8-9).

owed by SRP for Cost of the Work upon termination, $1,779,908 was invoiced through and including certified Application for Payment No. 34, which application SRP does not dispute it received. (ECF No. 99, at 15). J.E. Dunn believes that it is still owed $1,779,908 for the Cost of the Work, consisting of $1,683,446 of past retainage[8] and $96,462 of "non-retainage" (of the original $978,997 figure represented as the "amount certified" under Application No. 34). (*Id.* at 7). The $96,462 figures does not appear anywhere in Payment Application No. 34 and SRP does not agree that the summary in Mr. Noble's affidavit is accurate.

Mr. Noble further declares that the value of the remaining Costs of the Work to be performed by J.E. Dunn totaled $5,255,058, and that J.E. Dunn's 3.5 percent fee on this

---

[8] Article 11.4.4 of the Subcontract explains how retainage was to be withheld:

> Ten percent (10%) retainage shall be withheld from each progress payment until the Project is 50% complete, at which time the retention may be reduced to zero percent (0%) on all subsequent payments. At substantial completion, all retainage shall be paid to Contractor [J.E. Dunn], less an amount equal to one hundred fifty percent (150%) the value of incomplete punch list work for the entire Project, as agreed by Owner.

(ECF No. 33-3, at 11).

unperformed work would have totaled $183,927.03.  (ECF No. 95-2 ¶ 6).

SRP correctly argues that "J.E. Dunn's only proof with regard to the 'Cost of the Work' are its invoices and the Affidavit of Travis Noble which only states the *total amount* J.E. Dunn claims is the Cost of the Work based on J.E. Dunn's Applications for Payment Nos. 34, 35, and 36." (ECF No. 97-1, at 33) (emphasis added).  Application No. 34 reflects that $978,997 was the "amount certified" by the architect.  The only "evidence" J.E. Dunn submits to show the amounts still due under Application No. 34 is a summary affidavit from Mr. Noble and J.E. Dunn's answer to an interrogatory in which it again summarily represents that of "the Cost of the Work owed through Application and Certification for Payment No. 34, $1,683,446 represents retainage and $96,462 represents non-retainage." (ECF No. 94-11, at 7).[9]  J.E. Dunn provides no supporting documentation to show how much of the "non-retainage" amount had been paid by SRP and how much remains outstanding.  Moreover, attached to Application for Payment No. 34 is a "continuation sheet" which J.E. Dunn argues represents the "value of the Cost

---

[9] J.E. Dunn also includes an affidavit from John Graham, the Regional Director of Finance for the South-Central Region for J.E. Dunn, who, like Mr. Noble, avers as to the $96,462 owed in "non-retainage" and $1,683,446 accumulated as retainage through Payment Application No. 34.  (ECF No. 99-1 ¶ 8).

of the Work for the period covered by the particular payment
application for each division of work." (ECF No. 99, at 33).
Nothing on the "continuation sheet" identifies $96,462 as a
figure that remains due to J.E. Dunn from SRP of the $978,997
certified in Application No. 34. Moreover, although it
references various columns from the "continuation sheet" in its
papers, J.E. Dunn has not explained to the court – with any
level of precision - the retainage figure accumulated through
Application No. 34.[10]

J.E. Dunn argues that it had no duty to submit "back up"
documentation to substantiate the Cost of the Work and that the
summary affidavit from Mr. Noble suffices. (ECF No. 99, at 34).
Federal Rule of Evidence 1006 states:

> The contents of voluminous writings,
> recordings, or photographs which cannot
> conveniently be examined in court may be
> presented in the form of a chart, summary,
> or calculation. The originals, or
> duplicates, shall be made available for
> examination or copying, or both, by other
> parties at reasonable time and place. The
> court may order that they be produced in
> court.

Rule 1006 "is a rule to admit charts into evidence as a
surrogate for underlying voluminous records that would otherwise

---

[10] Application for Payment No. 34 indicates that "retainage"
was calculated by taking ten percent of completed work, a figure
that apparently was determined by adding "Column D +E on G703."
(ECF No. 94-8, at 182). A document labeled "AIA Document
G702a[,]" and not G703, is attached to Application for Payment
No. 34, however.

be admissible into evidence." *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004). "The purpose of this Rule is to reduce the volume of written documents that are introduced into evidence by allowing in evidence *accurate derivatives* from the voluminous documents." *Id.* at 272 (emphasis added).

Here, SRP challenges the accuracy of the summary affidavit and J.E. Dunn has not come forward with any documents substantiating the accuracy of the amounts it seeks in damages. J.E. Dunn indicates in a footnote in the reply memorandum that:

> [it] produced its entire Project file to SRP consisting of approximately 26,000 pages of documents. Additionally, JE Dunn subpoenaed the payment applications and all of the back-up documentation from a second source, the Project architect. JE Dunn invited SRP to come inspect and/or have the Project's architect's copies of the payment applications and back-up documentation, approximately 3 ½ banker's boxes of documents, copied. *See* Exhibit 3. SRP did not bother to do so or to even respond to JE Dunn's invitation.

(ECF No. 99, at 36-37 n.61; ECF No. 99-3, July 17, 2014 letter from J.E. Dunn to SRP regarding 3 ½ bankers' boxes of documents).

J.E. Dunn has the burden to prove damages and that it is entitled to judgment as a matter of law, and the affidavit from Mr. Noble and its own answers to interrogatories which provide only a summary are not sufficient to prove a specific amount in damages purportedly owed by SRP.

18

Similarly, J.E. Dunn's "evidence" in support of damages claimed under Application for Payment No. 35 is problematic. J.E. Dunn indicates (in a footnote in its memorandum in opposition to SRP's cross motion for summary judgment) that it calculated the $1,811,152 figure – which it believes covers the amount owed by SRP from July 18, 2008 to August 18, 2008 under Application for Payment No. 35 - as follows:

> The amount reflected as due and owing under Payment Application No. 35 is $1,632,074; however, this amount does not include the retainage of $179,078. The retainage on Payment Application No. 35 can be calculated by subtracting the retainage from Payment Application No. 34 from Payment Application No. 35 ($1,862,524-$1,683,446 = $179,708). When the retainage is added to the amount reflected as due and owing the total owed is $1,811,152 ($1,632,074 + $179,078 = $1,811,152). It should be remembered that Payment Application No. 35 was submitted on August 14, 2008, prior to the termination of the Subcontract by SRP.

(ECF No. 99, at 23 n.39). Arguments made by counsel are not evidence, however. Aside from the summary affidavit from Travis Noble attesting to the *total* amount in damages allegedly owed by SRP for the Cost of the Work, J.E. Dunn has provided no evidence justifying its entitlement to the $1,811,152 in damages it seeks under Application No. 35. Moreover, Application for Payment No. 35 purportedly covers the period from June 20, 2008 to August 21, 2008, which *overlaps* with the time period covered in Application for Payment No. 34, covering the period from June

20, 2008 to July 17, 2008.   (ECF No. 94-8, at 187-190).   Unlike

the  other  applications  for  payment,  there  is  no  "amount

certified" by the architect under Application No. 35.  J.E. Dunn

argues:

> Although JE Dunn Dunn's Payment Application
> No. 35, which covers this time period, was
> not certified by the Project architect, the
> work was certified by the Project architect
> by way of Payment Application No. 36 as the
> payment  applications  are  cumulative.    JE
> Dunn certified under Payment Application No.
> 35 that it had completed work on the Project
> totaling  $28,793,908.    JE  Dunn  certified
> under Payment Application No. 36 that it had
> completed  work  totaling  $30,812,228.   This
> amount   includes   the   prior   Payment
> Application No. 35 and is certified by the
> Project  architect  as  due  and  owing  to  JE
> Dunn.

(ECF No. 99, at 22).

There  are  multiple  problems  with  J.E.  Dunn's  arguments.

First,  the  $28,793,908  figure  referenced  by  J.E.  Dunn  is

reflected on Application No. 35 as an amount representing the

"total completed and stored to date," which is *different* from

the  "amount  certified"  by  the  architect  as  indicated  in  the

other applications for payments.[11]  (*See* ECF No. 94-8, at 187).

Moreover,  J.E.  Dunn's  *counsel*  argues  that  the  applications  for

payments  are  cumulative,  and  that  it  is  immaterial  that

---

[11]  For  instance,  the  "amount  certified"  under  Application
for Payment No. 36 is $1,832,444, which is different from the
figure representing the "total completed & stored to date."
(ECF No. 94-8, at 192).

Application No. 35 was not certified because Application for Payment No. 36 was certified.  Again, J.E. Dunn cites the two applications for payment as support for this proposition, but nothing in those applications indicate that the total amount owed under each application does not have to be certified because the applications are cumulative.  J.E. Dunn also cites deposition testimony from Mr. Taylor, but the portion of his testimony cited says nothing about cumulative applications.  (*See* ECF No. Exh.1.1, Taylor depo, at 39).  Moreover, as J.E. Dunn concedes, Application for Payment No. 36 was addressed to Metropolitan, *not* SRP, and covers the period from August 22, 2008 until September 19, 2008, after the Subcontract between SRP and J.E. Dunn had been terminated.  (*See* ECF No. 94-8, at 192).

Based on the foregoing, summary judgment will be denied on the breach of contract claim by J.E. Dunn against SRP.[12]

---

[12] J.E. Dunn also argues that it is entitled to prejudgment interest in the amount of ten percent pursuant to Article 13.2 of the Subcontract.  Specifically, Article 13.2 covers accrued interest and states that "[p]ayments due and unpaid under this Agreement shall bear interest from the date payment is due" at a ten (10) percent rate.  (ECF No. 33-3, at 12).  The court need not determine J.E. Dunn's entitlement to pre-judgment interest, however, considering that summary judgment will be denied as to the breach of contract claim against SRP.  It should be noted, however, that under Maryland law, "interest is allowable as a matter of right for a breach of contract to pay when the amount due has been liquidated, ascertained, or agreed to."  *United States v. State of W.Va.*, 764 F.2d 1028, 1031 (4th Cir. 1985); *Wood Prods., Inc. v. CMI Corp.*, 651 F.Supp. 641, 653 (D.Md. 1986).  J.E. Dunn even acknowledges that the "Subcontract does not provide for a specific time within which the amounts owed to

### 2.   J.E. Dunn's Quantum Meruit Claim against Metropolitan

J.E. Dunn also moves for summary judgment on the quantum meruit claim against Metropolitan in count VIII of its amended complaint.  Metropolitan has not opposed the motion.  Even where the nonmoving party fails to respond, however, the requested relief is not automatically granted.  *See* Fed.R.Civ.P. 56(e)(2).  Rather, the court must "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

J.E. Dunn asserts that Metropolitan is liable to it in the amount of $3,629,891 under a theory of quantum meruit. (*See* ECF No. 31 ¶ 23).   Quantum meruit refers to restitution for the value of a benefit bestowed on one party by another. *See, e.g., Dolan v. McQuaide*, 215 Md.App. 24, 37-38 (2013) (explaining that "quantum meruit is not truly a cause of action but a measure of recovery available in an action for contract implied-in-fact or for unjust enrichment").   Three elements must be established by a plaintiff to sustain a claim for quantum meruit: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and

---

JE Dunn by SRP under [Article] 14.3 are to be paid."  (ECF No. 95-1, at 11).  Moreover, the amounts due were disputed and still have not been ascertained.

(3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Paramount Brokers, Inc. v. Digital River, Inc.*, 126 F.Supp.2d 939, 946 (D.Md. 2000) (*quoting Everhart v. Miles*, 47 Md.App. 131, 136 (1980)).

J.E. Dunn asserts that its quantum meruit claim against Metropolitan is based on an "implied-in-fact contract." J.E. Dunn submits an affidavit from Tory Sigler, the Vice President for J.E. Dunn, in which he avers:

> 5. *After Metropolitan terminated the Development and Design-Build Contracts, Metropolitan requested that JE Dunn continue performing work on the Project and represented to JE Dunn that it would pay JE Dunn for its work. At this time, Metropolitan represented that it was seeking additional financing to complete the entire Project, including scopes of work and costs in excess of the work already approved by the Work Authorization package 1 through 10.*

> 6. Shortly after [SRP] terminated the Subcontract by letter notice[] dated August 18, 2008, I participated in several meetings at the Project site with representatives of Metropolitan, including Metropolitan's Senior Servant, Dr. H. Beecher Hicks, Jr., and Denise Gibson-Bailey, a member of Metropolitan's Millennium Committee, which Committee was responsible for overseeing the Project on behalf of Metropolitan. During these meetings[,] Dr. Hicks and/or Ms. Gibson-Bailey requested that JE Dunn continue performing work on the Project *and represented that Metropolitan would pay JE Dunn for its work.*

23

> 7. JE Dunn performed work on the Project
> directly for Metropolitan from mid-August
> 2008 to early October 2008. *JE Dunn
> submitted two payment applications to
> Metropolitan for this work.* At no time has
> Metropolitan objected to the work performed
> by JE Dunn for Metropolitan. Further, at no
> time did Metropolitan retract its repeated
> requests that JE Dunn continue performing
> work on the Project or its representation
> that it would compensate JE Dunn for its
> work.
>
> 8. JE Dunn ceased work on the Project in
> early October 2008 as a result of
> Metropolitan's failure to pay JE Dunn as
> promised.

(ECF No. 95-4 ¶¶ 5-8) (emphases added).

J.E. Dunn has established liability as to the quantum meruit claim. It continued to perform work on the Project directly for Metropolitan after the termination of the Subcontract with SRP and until mid-October 2008. J.E. Dunn submitted affidavits establishing that it was not compensated for the work performed for Metropolitan on the Project.

J.E. Dunn's motion for summary judgment will be denied as to the amount of damages sought for the quantum meruit claim, however. A measure of recovery on a quantum meruit claim based on an implied-in-fact contract, which is how J.E. Dunn characterizes its relationship with Metropolitan after the termination of the Subcontract, is "based on the amount that the parties intended as the contract price or, if that amount is

24

unexpressed, the fair market value of the plaintiff's services." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Com'rs*, 155 Md.App. 415, 484 (2004) (*quoting Mogavero v. Silverstein*, 142 Md.App. 259, 276 (2002)). The record is insufficient to establish as a matter of law the reasonable value of services rendered to Metropolitan. J.E. Dunn represents in its motion for summary judgment that SRP – with the consent of Metropolitan – allowed J.E. Dunn to perform particular scopes of work under the Subcontract and for the Project through ten Work Authorization packages. (ECF No. 95-1, at 4). Paul Taylor of SRP provided deposition testimony that the ten Work Authorization packages amounted to $34,001,754 and were approved by both SRP and Metropolitan. (ECF No. 94, Ex.A.1, Taylor depo, at 102; *see also* Ex.A.9, Work Authorization Packages). J.E. Dunn has submitted documents – signed by Metropolitan – reflecting a total authorized amount of $34,001,754 for the ten Work Authorization packages, an amount which includes the Contractor's Fee. J.E. Dunn submits an affidavit from Jason T. Martin, in which he avers that J.E. Dunn performed an additional $3,629,891 of the remaining $5,255,058 of work under Work Authorization packages one through ten directly for Metropolitan and is still owed this amount. (ECF No. 95-2 ¶ 7).

Much like its breach of contract claim against SRP, J.E. Dunn again does not include any supporting documentation to substantiate the $3,629,891 figure as the value of its services or as the amount remaining outstanding for work performed for Metropolitan under the Work Authorization packages after the termination of the Subcontract with SRP. Nor has J.E. Dunn provided the two payment applications it purportedly sent to Metropolitan for work performed. The record lacks sufficient evidence to prove J.E. Dunn's entitlement to the $3,629,891 figure it seeks in damages against Metropolitan. Accordingly, summary judgment will be granted as to liability on the quantum meruit claim, but denied as to damages.

**B.    SRP's Cross Motion for Summary Judgment**

SRP seeks summary judgment on J.E. Dunn's breach of contract claim, quasi-contractual claims in counts two through four of the amended complaint, and the negligent misrepresentation claim in count five.

**1.    Breach of Contract**

SRP's arguments for judgment in its favor on the breach of contract claim by J.E. Dunn take two forms. First, it argues that it is undisputed that SRP had the right to terminate the Subcontract without cause pursuant to Article 14.1, and it could not have breached the contract by exercising this right. (ECF No. 97-1, at 16-17). J.E. Dunn does not challenge SRP's

termination of the Subcontract, however, but argues that SRP did not fulfill its payment obligations under Article 14.3. SRP's second argument is that there can be no breach of contract where a party fails to satisfy a condition precedent to payment. (ECF NO. 97-1, at 17-18). On this front, SRP construes Article 11.3 of the Subcontract as obligating it to make payment to J.E. Dunn upon termination "only upon actual receipt by S.R.P. of an Application for Payment." (ECF No. 97-1, at 10). Article 11.3 of the Subcontract states:

> *Provided an Application for Payment is received by the Design/Builder not later than the last day of a month*, the Design/Builder shall make payment to the Contractor not later than the Twentieth day of the following month. If an Application for Payment is received by the Design/Builder after the application date fixed above, payment shall be made by the Design/Builder not later than Twenty (20) days after the Design/Builder receives the Application for Payment.

(ECF No. 33-3, at 10) (emphasis added).

Where a contractual duty is subject to a condition precedent, there is no duty of performance until the condition precedent has occurred or been performed. *Chirichella v. Erwin*, 270 Md. 178, 181 (1973) (*citing Griffith v. Scheungrab*, 219 Md. 27, 34-35 (1958)). In *Chirichella*, the Court of Appeals of Maryland noted that "[a] condition precedent has been defined as 'a fact, other than mere lapse of time, which, unless excused,

must exist or occur before a duty of immediate performance of a promise arises.'" *Chirichella*, 270 Md. at 182 (*quoting* 17 Am.Jur.2d. Contracts, § 320; *see also* 13 Williston on Contracts § 38:1 (4th ed. 2010) ("A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance."). "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in [] light of all the surrounding circumstances when they executed the contract." 13 Williston on Contracts § 38:1; *Chirichella*, 270 Md. at 182. Practical convenience and necessity have led courts to include within the term "express conditions" not only those manifested by words, *but* also those necessarily inherent in the actual performance of the contract, which are sometimes termed "conditions implied in fact" or "implied conditions." 13 Williston on Contracts § 38:11. Conditions precedent are not favored in law and courts should not construe such unless required to do so by plain, unambiguous language or by necessary implication. *Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 263 n.2 (4th Cir. 1981).

Nothing in Article 14.3 – which covers amounts to be paid to J.E. Dunn upon termination pursuant to Article 14.1 – or in Article 14.5 – which covers calculation of payment upon

termination – conditions payment to J.E. Dunn on receipt of an application for payment.  Article 11.3, which is the provision on which SRP relies to evade all liability for any amount still owed under the Subcontract, covers submission of an Application for Payment in the context of *progress payments*.  There is no question that J.E. Dunn was to be compensated upon termination of the contract with SRP without cause, provided there is a demand for payment and a proper accounting of the amount owed. It is uncontroverted that SRP received Application for Payment No. 34, and part of J.E. Dunn's claim for breach of contract damages is based on SRP's failure to pay amounts owed under this application.  The parties dispute whether SRP ever received Application for Payment No. 35.  Mr. Taylor of SRP gave deposition testimony that J.E. Dunn never submitted Application for Payment No. 35.  (*See* ECF No. 94, Appendix A, Taylor depo, at 193 ("J.E. Dunn never submitted pay application 35 to me.")). J.E. Dunn, on the other hand, believes SRP received Application for Payment No. 35 because it is addressed to SRP (as compared to Application for Payment No. 36, which is addressed to Metropolitan).  Based on the foregoing, SRP's motion for summary judgment on J.E. Dunn's breach of contract claim will be denied.

### 2. Quantum Meruit (Count II) and Unjust Enrichment (Count III)

SRP argues that J.E. Dunn cannot recover on its claims for quantum meruit and unjust enrichment as a matter of law because no quasi-contractual claims can exist when a contract in fact exists between the parties. (ECF No. 97-1, at 19-20). *Citing Ver Brycke v. Ver Brycke*, 379 Md. 669 (2004), J.E. Dunn counters that "a party may bring a quasi-contractual claim under Maryland law even when an express written contract governing the same subject matter exists where, as here, it is alleged that a breach of contract has occurred." (ECF No. 99, at 24). J.E. Dunn contends that because SRP allegedly breached the Subcontract, it is entitled to bring its quasi-contractual claim in the alternative. Alternatively, J.E. Dunn contends that SRP's request for summary judgment on the quasi-contractual claims is premature and that judgment should not be entered for SRP on these claims until there is a final ruling on J.E. Dunn's breach of contract claim. (*Id.*).

J.E. Dunn's arguments are unpersuasive. "[U]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Cnty. Cmm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons,*

30

*Inc.*, 358 Md. 83, 96 (2000) (*quoting Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (D.Md. 1998)) (internal quotation marks omitted).   In Maryland, "[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *J. Roland Dashiell & Sons*, 358 Md. at 96 (internal citation omitted); *see also FLF, Inc. v. World Publ'ns, Inc.*, 999 F.Supp. 640, 642 (D.Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."). Although a plaintiff may plead in the alternative by asserting claims for unjust enrichment and breach of contract, when doing so the "plaintiff's claim for unjust enrichment *must* include an allegation of fraud or bad faith in the formation of the contract." *Jones v. Pohanka Auto N., Inc.,* 43 F.Supp.3d 554, 573 (D.Md. 2014) (dismissing a plaintiff's claim for unjust enrichment, where the plaintiff had acknowledged the existence of a contract with defendant, because "nowhere in the complaint [did plaintiffs] actually allege bad faith in the formation of [the contract]"); *Kwang Dong Pharm. Co. v. Han*, 205 F.Supp.2d 489, 497 (D.Md. 2002) (absent evidence of fraud or bad faith, "unjust enrichment claims are barred where an express contract exists").   Moreover, "although [plaintiff] may not recover under

31

both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 792 (D.Md. 2002); *Abt Assoc., Inc. v. JHPIEGO Corp.*, 104 F.Supp.2d 523, 534 (D.Md. 2000) ("[W]hen there is an express contract dealing specifically with the services rendered, quantum meruit is unavailable").

It is uncontroverted that the Subcontract governs the terms, scope, and compensation (and all other relevant aspects) surrounding the relationship between J.E. Dunn and SRP.   J.E. Dunn cannot recover under quantum meruit or unjust enrichment in the face of an express contract.   Accordingly, SRP's motion for summary judgment will be granted as to the quantum meruit and unjust enrichment claims.

### 3.   Promissory Estoppel (Count IV)

J.E. Dunn also asserts a promissory estoppel claim against SRP.   (ECF No. 31 ¶¶ 39-43).   Specifically, the amended complaint includes allegations that "SRP, Robuck and Smoot Corp. promised JE Dunn that if it supplied labor, materials and services to the Project and in furtherance of the Design-Build Contract, SRP, Robuck and/or Smoot Corp. would compensate JE Dunn for such labor, materials and services." (*Id.* ¶ 40).   J.E. Dunn further avers that it reasonably relied on these promises

32

and supplied the labor, materials, and services for the Project. (*Id.* ¶ 42). SRP makes two arguments in support of summary judgment: (1) that no quasi-contractual claim of promissory estoppel can lie where an express contract covers the same subject matter; and (2) that the only available remedy to a plaintiff seeking relief under a theory of promissory estoppel is the enforcement of the promise, but here J.E. Dunn seeks to recover compensatory damages. (ECF No. 97-1, at 21-22). J.E. Dunn only addresses the second argument in response, contending that the promise J.E. Dunn seeks to enforce is the promise to pay. (ECF No. 99, at 25).

Summary judgment will be granted to SRP on the promissory estoppel claim. Judge Blake noted in *Goss v. Bank of America, N.A.,* 917 F.Supp.2d 445, 450-51 (D.Md. 2013):

> "Maryland courts, which disapprove of the term 'promissory estoppel,' have incorporated the Restatement (Second) on Contracts to adopt the analogous doctrine of 'detrimental reliance,' a tort that does not sound in fraud." *Jordan v. Alt. Resources Corp.,* 458 F.3d 332, 348 (4th Cir. 2006) (*citing Pavel Enterprises, Inc. v. A.S. Johnson Co.,* 342 Md. 143, 674 A.2d 521, 532 (1996)). "*Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise.*" *Edell & Assoc., P.C v. Law Offices of Peter G. Angelos,* 264 F.3d 424, 440 (4th Cir. 2001). To maintain a claim under promissory

estoppel, or "detrimental reliance," the
plaintiffs must allege:

> (1) a clear and definite promise;
> (2) where the promisor has a
> reasonable expectation that the
> offer will induce action or
> forbearance on the part of the
> promisee; (3) which does induce
> actual and reasonable action or
> forbearance by the promisee; and
> (4) causes a detriment which can
> only be avoided by the enforcement
> of the promise.

*Pavel,* 674 A.2d at 532.

(emphasis added). "A party may bring an action seeking both breach of contract and promissory estoppel, because if the court finds that the contract is unenforceable it may nonetheless provide relief based on detrimental reliance." *Wright Solutions, Inc. v. Wright*, Civ. Action No. CBD-12-178, 2013 WL 1702548, at *5 (D.Md. Apr. 18, 2013); *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 343 (D.Md. 2012) ("In Maryland, promissory estoppel is, in essence, an alternative means of obtaining contractual relief." (internal quotation marks omitted)). A claim for promissory estoppel is "a device for contractual recovery, when an element of a traditional bilateral contract is lacking[,]" such as acceptance or consideration. *Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police v. Md. Transp. Auth.*, 195 Md.App. 124, 218 (2010), *rev'd in part on other grounds*, 420 Md. 131 (2011).

34

"Once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties . . . then a party may no longer recover under the theory of promissory estoppel." *Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*, 725 F.Supp.2d 513, 531 (D.Md. 2010); *Wright Solutions, Inc.*, 2013 WL 1702548, at *6 ("If the Court finds that the parties' Agreements are enforceable, Plaintiff would not be entitled to any relief separate from its cause of action for breach of contract.").

Here, though, neither party challenges the enforceability of the Subcontract. *Cf. Whiting-Turner Contracting Co.*, 912 F.Supp.2d at 344 (declining to dismiss a promissory estoppel claim where "on the current state of the record, it appears to be hotly disputed whether Whiting-Turner in fact entered into a valid contract with Liberty Mutual."). Accordingly, judgment will be entered in favor of SRP on this claim.

### 4.   Negligent Misrepresentation (Count V)

Under Maryland law, to prevail on a claim of negligent misrepresentation, a plaintiff must establish that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended that his statement would be acted upon by the plaintiff; (3) the defendant had knowledge that the plaintiff would probably rely on the same, which, if erroneous, would cause loss or injury;

35

(4) the plaintiff, justifiably, took action in reliance on the statement; and (5) the plaintiff suffered damage proximately caused by the defendant's negligence. *See Swinson v. Lords Landing Vill. Condo*, 360 Md. 462, 477 (2000). As explained above, the negligent misrepresentation claim against SRP was dismissed by memorandum opinion issued on September 20, 2012, insofar as that claim was based on an alleged duty by SRP to manage the project in accordance with industry standards or to make accurate representations *after* the Subcontract was signed. (ECF No. 25, at 26). The court allowed the claim to proceed only to the extent that J.E. Dunn alleged negligent misrepresentation based on *pre-contractual negotiations* that induced it to enter into the Subcontract. (*Id.* at 22).

SRP argues that the negligent misrepresentation claim fails because J.E. Dunn cannot establish the justifiable reliance element "as the evidence shows that J.E. Dunn was directly involved in the pre-contract due diligence and investigation along with the project architect, Rees Associates, before S.R.P. entered into the Development Contract and Design/Build Contract with Metropolitan and before J.E. Dunn entered into the Subcontract with SRP." (ECF No. 97-1, at 23). SRP submits as evidence the Guaranteed Maximum Price Proposal, dated September 20, 2005, which SRP contends J.E. Dunn was directly involved in developing and which was presented upon the conclusion of the

conceptual phase of the project.   (*See* ECF No. 94, Exh. A.2).

Mr. Taylor of SRP also gave the following deposition testimony:

> Q: Do you -- and, again, when I say you, I'm referring to S.R.P. -- agree that those drawings are the preliminary renderings, floor plans and site plans referenced in paragraph one?
>
> A: Yes, sir.
>
> Q: Now paragraph two says final scope shall be controlled by J.E. Dunn to comply with the established GMP; is that correct?
>
> A: That is correct.
>
> Q: As this project progressed, is it S.R.P.'s position that J.E. Dunn had control over the final scope?
>
> A: Yes, sir.
>
> Q: So J.E. Dunn was in a position to tell the owner, you don't get to decide what the final scope of this project is, we decide?
>
> A: That's correct.
>
> Q: And what do you base that upon?
>
> A: During the process, which is not included here, there was a set of scope assumptions that led up to what's referenced in this August 11th 2005 document that Rees prepared that was done in concert with Rees, Dunn and the owner.  In that document was a detailed description of all the different types of products, services and goods that were going to be supplied into the conceptual documents.
>
> All three parties, Dunn, Rees and the church, had to sign off on that document. They signed off on the document and that

> became the memorialized scope of work that
> allowed the project to move forward.

(ECF No. 94, Exh.A.1, Taylor depo, at 25-26). SRP contends that "J.E. Dunn was an active participant with Rees, the Project architect, [and as such] it had access to the information regarding the scope of the Project and was capable o[f] its own investigat[ion] and determining the costs of the Project before entering into the Subcontract." (ECF No. 97-1, at 24).

The amended complaint recites that "SRP breached its duty to JE Dunn by making material misstatements to JE Dunn regarding the propriety of the manner of calculating JE Dunn's compensation under the SRP Subcontract in light of SRP's representations and agreements with Metropolitan." (ECF No. 31 ¶ 46). In its opposition to SRP's cross-motion for summary judgment, J.E. Dunn asserts that its negligent misrepresentation claim is based "on SRP's misrepresentation to JE Dunn that Metropolitan was aware that a firm, fixed price GMP had not and could not be agreed to until the Project design and construction documents became sufficiently detailed to allow JE Dunn to obtain proposals from subcontractors for the entire scope of the Project." (ECF No. 99, at 26). J.E. Dunn cites its answer to SRP's interrogatories, in which it further explains:

> JE Dunn states that, upon information
> and belief, *SRP failed to accurately explain
> to Metropolitan that the preliminary and
> rudimentary nature of the Project design and*

> *construction documents prohibited SRP and JE*
> *Dunn from agreeing upon a Guaranteed Maximum*
> *Price prior to and at the time SRP and JE*
> *Dunn entered into the SRP Contract.* Rather,
> SRP apparently led Metropolitan to believe
> that a firm, fixed Guaranteed Maximum Price
> had been agreed to between SRP and JE Dunn.
> *SRP further failed to disclose to JE Dunn*
> *that Metropolitan was unaware that a*
> *Guaranteed Maximum Price had not and could*
> *not be agreed to until the Project Design*
> *and construction documents became*
> *sufficiently detailed to allow JE Dunn to*
> *obtain proposals from subcontractors for the*
> *entire scope of the Project.*

(ECF No. 99-2, at 3-4) (emphases added).

To prevail, J.E. Dunn has the burden to prove the elements of a negligent misrepresentation claim by a preponderance of the evidence. J.E. Dunn provides sparse details, if any, as to how it justifiably relied on any purportedly false statements made by SRP as to the extent of Metropolitan's understanding regarding pricing and the damages J.E. Dunn suffered as a result. The only "evidence" it has produced concerning the negligent misrepresentation claim is its response to SRP's interrogatories; it offers no affidavits or deposition testimony to show that it justifiably relied to its detriment on alleged misrepresentations by SRP to J.E. Dunn "as to what Metropolitan, the funding source, understood about the GMP." (ECF No. 99, at 27). For instance, absent from the record is any *evidence* about how any such purported misrepresentations induced J.E. Dunn to enter into the Subcontract with SRP. On the other hand, the

deposition testimony from Paul Taylor cited by SRP that J.E. Dunn maintained control over the final scope of the project and that J.E. Dunn, the architect, and Metropolitan all had to agree on the conceptual document which detailed the different types of products, services and goods that were going to be supplied into the conceptual documents, does not necessarily relate to or negate any purported misrepresentation made by SRP to J.E. Dunn in the pre-contractual negotiations phase and the reasonableness of any reliance by J.E. Dunn thereon.  Although J.E. Dunn will need to come forward with much more proof ultimately to prevail on the negligent misrepresentation claim, viewing the facts in the light most favorable to J.E. Dunn as the non-moving party, there is a genuine dispute of material fact as to the justifiable reliance and damages elements of this claim.

Finally, citing cases outside of the Fourth Circuit, SRP also contends that "[a]s for the damage element of the negligent misrepresentation claim, J.E. Dunn's tort and contract claims merge because J.E. Dunn has conceded that it cannot establish separate damages resulting from S.R.P.'s alleged negligent misrepresentation." (ECF No. 97-1, at 25) (*citing The Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 656 F.Supp. 49 (S.D.Ohio 1986); *Medical Billing, Inc. v. Medical Management Sciences, Inc.*, 212 F.3d 332 (6th Cir. 2000)).  Unlike the quasi-contractual claims of unjust enrichment, quantum meruit, and

promissory estoppel, however, negligent misrepresentation is a tort claim. The fact that J.E. Dunn ultimately may not be entitled to a separate recovery for negligent misrepresentation does not warrant entering judgment in favor of SRP on this claim at this juncture.

### C. Metropolitan's Motion for Summary Judgment

Metropolitan moves for summary judgment on SRP's two cross-claims against it for breach of contract and tortious interference with contractual relations.

### 1. Breach of Contract

SRP asserts in its amended pleading:

> 33. Metropolitan and SRP entered into a contract under which SRP would be paid a five percent fee for managing the Project.

> 34. When it became apparent that J.E. Dunn could not complete the Project within the GMP, Metropolitan and J.E. Dunn negotiated a separate contract between themselves to complete the Project that cut SRP out of the Project.

> 35. Metropolitan breached i[t]s contract with SRP by not paying SRP *the full five percent management fee* due and owing to SRP.

(ECF No. 64 ¶¶ 33-35) (emphasis added).

Metropolitan argues that the breach of contract cross-claim is time-barred. (ECF No. 98, at 4-5). SRP has not opposed the motion. The same standard of review set forth above on an

unopposed motion for summary judgment applies to Metropolitan's unopposed motion.

Metropolitan has the burden of proof on its statute of limitations affirmative defense. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit."). In Maryland, the default statute of limitations for civil actions is three years "unless another provision of the Code provides a different period of time." Md. Code Ann., Cts. & Jud. Proc. § 5-101. In contract cases, the statute of limitations generally "begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforc[ea]ble." *Mayor and Council of Federalsburg v. Allied Contractors, Inc.*, 275 Md. 151, 157 (1975). Metropolitan asserts that "S.R.P.'s breach of contract claim relies on Metropolitan's termination letter sent on July 29, 2008[,]" (ECF No. 98-1, at 4-5), but SRP's breach of contract claim actually rests on Metropolitan's purported failure to pay SRP the full five percent management fee pursuant to the Development Contract. Thus, the relevant date here is the date payment of the Management Fee from Metropolitan became due.

Article 3.1 of the Development Contract states: "As compensation for the Development Manager's Services, Owner shall

pay SRP a fee equal to 5% of the total construction budget for
the Project (the "Development Manager's Fee")." (ECF No. 33-1,
at 5). Article 3.3 of the Development Contract covers payment
of the Development Fee:

> 3.3 <u>Payment of the Development Fee</u>. The
> Development Manager's Fee shall be paid by
> the Owner to the Development Manager as
> follows:
>
> 3.3.1 SRP's payment schedule is to be 75% of
> the agreed upon fee at time of first draw on
> the construction loan, less $50,000 in prior
> payments made by Owner to SRP for
> development manager services, and
>
> 3.3.2 The remainder of the fee shall be
> payable in monthly equal installments based
> upon the scheduled construction period. The
> construction period is currently anticipated
> to be an eighteen (18) month construction
> time.
>
> 3.3.3 Payment shall be made in concert with
> the monthly pay request approved by the
> Financial Institution for disbursement
> against the Construction Loan. *Final
> payment will not be due until the Project
> has been completed.* The Development Manager
> fee is final, and may not be modified except
> by express written agreement between the
> parties.

(*Id.*) (emphasis added). Article 3.5 of the Development Contract
provides that "SRP shall provide Owner with monthly invoices for
the Development Manager's Fee and expense reimbursement due
*which shall be submitted monthly through the construction
invoicing process.* Invoices shall include a breakdown of
expenses submitted and reasonable documentation of such expense

items." This provision does not specify a time frame for payment of invoices, however.

The Development Contract was terminated by letter from Metropolitan to SRP dated July 29, 2008. (ECF No. 34-2, at 3). The letter stated that Metropolitan was terminating the Development Contract pursuant to Article 6.1. (*Id.*). Article 6.1 states, in relevant part:

> 6.1 <u>Cancellation and Termination of Agreement</u>. Each party reserves the right to cancel this Agreement upon written notice to the other parties and to terminate its obligations hereunder at any time. Upon termination of this Agreement for convenience, then the parties are relieved of all further obligations, provided that Owner shall be obligated to pay the Development Manager the costs which have been authorized and incurred by it to the time of termination, *and that portion of the Development Manager's Fee that has been authorized and incurred by it at the time of termination.*

(ECF No. 33-1, at 6) (emphasis added). The Development Contract does *not* specify a time frame for when payment of the Development Manager's Fee "that has been authorized and incurred by it at the time of termination" becomes due under Article 6.1. Judge Bredar explained in *Mayor and City Council of Balt. v. Unisys Corp.*, 59 F.Supp.3d 729, 733-34 (D.Md. 2014):

> "In the absence of an express time for performance, a reasonable time will be implied." *Anne Arundel Cnty. v. Crofton Corp.*, 286 Md. 666[, 673] (1980); *see also Giannaris v. Cheng*, 219 F.Supp.2d 687, 694

44

> (D.Md. 2002) ("[A] contract that does not
> specify the time of performance . . . will
> be interpreted as intending performance in a
> 'reasonable time.'"); 17A Am.Jur.2d
> *Contracts* § 467 (2014) ("Where there is no
> provision as to the time for performance, a
> reasonable time is implied."). . . .
>
> Determining whether Defendant failed to
> perform in a reasonable time is a question
> of fact. "What constitutes a reasonable
> time for performance of a contractual
> obligation must be determined by the
> circumstances of the particular case. The
> intent of the parties is an important factor
> in this determination." *Ritz-Craft Corp. v.
> Stanford Mgmt. Grp.*, 800 F.Supp. 1312, 1318
> (D.Md. 1992).

Here, SRP filed its original cross-claim against
Metropolitan asserting breach of contract on October 26, 2012,
(ECF No. 33), more than four years after Metropolitan sent the
July 29, 2008 letter terminating the Development Contract.
Nothing on the record indicates that any event following the
termination letter extended the accrual of the purported breach
by Metropolitan. Based on the foregoing, the breach of contract
cross-claim by SRP against Metropolitan is time-barred.

**2. Tortious Interference with Contractual Relations**

SRP's tortious interference cross-claim against
Metropolitan alleges:

> 38. Metropolitan maliciously induced J.E.
> Dunn to secretly enter into contractual
> negotiations to cut SRP out of the three-way
> contractual relationship among SRP, J.E.
> Dunn and Metropolitan with the intent to

45

deny SRP its full Project Management Fee and otherwise harm SRP.

39. Metropolitan and J.E. Dunn entered into a new contract, solely between them, to complete the Project.

40. Metropolitan and J.E. Dunn both knew that the effect of their new contract, which intentionally and without justification excluded SRP, would deny SRP the ability to receive its full Project Management Fee.

41. SRP was not responsible for J.E. Dunn's inability to perform within the Guaranteed Maximum Price and there was no justification for cutting SRP out of the contractual relationship.

42. Once SRP was cut out of the contractual relationship, Metropolitan denied SRP its full Project Management Fee.

(*Id.* ¶¶ 38–42).

The United States Court of Appeals for the Fourth Circuit explained a tortious interference with contractual relations claim in *Painter's Mill Grill, LLC v. Brown*, 716 F.3d 342, 353–54 (4th Cir. 2013):

"Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms: inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.,* 336 Md. 635, 650 A.2d 260, 268 (1994) (internal quotation marks omitted). To establish a claim for wrongful interference with a contract, a plaintiff must demonstrate "(1) [t]he existence of a contract or a legally protected interest between the plaintiff and

a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Blondell v. Littlepage,* 185 Md.App. 123, 968 A.2d 678, 696 (2009) (internal quotation marks omitted), *aff'd,* 413 Md. 96, 991 A.2d 80 (2010). And to establish a claim for intentional interference with economic relationships, a plaintiff must demonstrate "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander,* 650 A.2d at 269 (internal quotation marks omitted).

Metropolitan seeks summary judgment on SRP's cross-claim for tortious interference with contractual relations on the basis that this claim also is time-barred and accrued on July 29, 2008, when Metropolitan terminated its Development Contract with SRP. (ECF No. 98-1, at 5). The problem here is that SRP's tortuous interference with contractual relations claim against Metropolitan appears to be based, at least in part, on the theory that Metropolitan improperly induced J.E. Dunn to breach its contract with SRP. For the reasons explained in the August 5, 2014 memorandum opinion, however, SRP did *not* state a

plausible claim for breach of contract against J.E. Dunn.  (*See* ECF No. 75, at 10-16).

Based on the allegations in the amended pleading, SRP also appears to base the tortious interference with contractual relations cross claim on the theory that Metropolitan interfered with SRP's economic relationships by "contracting" with J.E. Dunn and terminating its contracts with SRP.  More recent cases hold that the statute of limitations for a tortious interference with contractual relations claim accrues upon the date the contract is breached or terminated.  *See, e.g., Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 168 (2004) ("We hold that, absent a showing of fraud or intentional concealment, the statute of limitations for a claim for tortious interference with contractual relations, based on the termination of a contract, begins to accrue on the date that the contract was terminated."); *Abbott v. Gordon*, Civ. Action No. DKC 09-0372, 2009 WL 2426052, at *5 (D.Md. Aug. 6, 2009).  The termination letters to SRP from Metropolitan were issued on July 29, 2008, but the cross-claim was not asserted until October 26, 2012 – more than three years later.  Accordingly, this cross-claim also is time-barred.

## IV. Conclusion

For the foregoing reasons, J.E. Dunn's motion for summary judgment will be denied.  SRP's cross motion for summary

judgment will be granted in part and denied in part. Metropolitan's motion for summary judgment will be granted. A separate order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge